STATE ex rel. DOCKSTADER VS. BROWN and others, Supervisors of the the Town of Richmond.

*Bounty to recruits—Liability of town.*

1. A town voted a bounty tax, and directed its supervisors to issue an order for a certain amount against the fund so to be raised, to each volunteer who should enlist into the service of the United States to fill the quota of said town under a call then pending. D. subsequently re-enlisted to the credit of the town under said call, without any personal agreement with or direction by the authorities of the town, or of any committee thereof. The town had notice, before the quota was filled, that D. had so re-enlisted, but was not notified that he had been credited to it until after its quota had been otherwise filled, and orders issued to the whole amount of the bounty fund. *Held*, that the town was not liable to him for the payment of the bounty.

2. To establish such a liability it must appear that D. knew of the offer, and enlisted and was credited to the town *with a view* to obtain the bounty thus offered, and that the authorities of the town were notified of the fact before they paid the money to other recruits.

APPEALS from the Circuit Court for *Walworth* County.

These were applications for writs of *mandamus* commanding the supervisors of the the town of Richmond in said county to issue an order on the town treasurer in each case for $214, in favor of Willard Dockstader and —— Dockstader, respectively. It is alleged in substance, that the town, at a meeting legally called for the purpose December 30th, 1863, had instructed the supervisors to issue such an order to each volunteer who should enlist to fill the quota of said town, under a then pending call of the president, and should be received into the service of the United States. It is also alleged that each of the persons above named, "on the 6th of January, 1864, in order to help fill said quota, did enlist and volunteer for the term of three years in the military service of the United States, and was on that day mustered and received into the military service of the United States, as a private, * * * and was duly credited to said town as a volunteer from the same, in the filling of its quota as aforesaid." The answer of the respondent alleges that such enlistment was not " for or in contemplation of any bounty from said town, nor in pursuance of any under-

standing, nor at the suggestion or request of any of the officers of said town."

A stipulation as to the facts was filed by the parties, the substance of which is stated in the opinion.

The circuit court granted a peremptory *mandamus*, and the supervisors appealed.

*N. S. Murphy*, for appellants.

*H. Cousins* and *A. S. Spooner*, for relator, contended that by the resolution of the town meeting December 30th, 1863, a proposition was made by the town which was met by an acceptance on the part of the Dockstaders, and the fact made known to the board of supervisors, and thereafter neither party could withdraw from the contract without the other's consent.

COLE, J.   It is an admitted fact in the stipulation that the town board procured recruits to the number of thirteen (which was the quota assigned to the town) to be enlisted and credited to the town, and issued orders to each recruit in the sum voted by the electors at the special town meeting.   It is further admitted that the sons of the relator enlisted to the credit of the town under the same call of the president without any personal agreement with or direction by the authorities of the town, and without any direction of any committee of said town ; though the town had notice that they had enlisted as veterans before the quota was filled, but was not notified that they had been credited to the town.   Upon these facts the question arises, is the town liable to pay the sons of the relator the amount voted to each volunteer who should enlist to fill the quota of the town, and be received into the service of the United States, when it does not appear that these soldiers knew of the bounty or enlisted with reference to it ?   At the time of their enlistment they did not know, and probably had not heard, that the town had voted a bounty to volunteers. They had no understanding or agreement with the agents of the town upon the subject of their enlistment.   They enlisted

voluntarily on their own motion, doubtless from considerations valid and praiseworthy, but without regard to any proposition or offer of the the town, or the money which they now claim. Under these circumstances we are at a loss to know upon what principle the town can be held liable to pay them this bounty money. It is said the action of the electors of the town in voting a bounty to each volunteer who should enlist and be credited to the town under that call, was in the nature of a general continuing offer made to any resident without reference to the fact whether such volunteer was a veteran or not; and that the Dockstaders did accept this offer, and enlisted to fill the quota of the town. The difficulty with this argument is, that it does not appear that they did accept this offer or enlisted upon the strength of it. It should appear that they knew of this offer, or assented to it, were enlisted and credited to the town with a view to obtain this bounty money, and that the authorities of the town were notified of this fact before they paid out the bounty money to others. These facts we deem essential in order to show an obligation on the part of the town to pay them the bounty, since it is conceded that there was no actual personal agreement with the town authorities in respect to the enlistment. There is no ground for saying that these facts appear upon this record, and it is quite impossible to assume that the sons of the relator acted or relied upon the faith of this offer of the the town. If there were any grounds for holding that they accepted the offer of the town, assented to it, and enlisted with reference to it, that might amount to a contract upon which the town would be liable. But clearly there is not anything to warrant such an inference. We therefore think the court below erred in granting a peremptory writ of *mandamus* commanding the supervisors to draw the orders in favor of the relator.

*By the Court.*—The judgment of the circuit court is reversed, in each case, and the cause remanded, with directions to dismiss the applications.