THE COUNTY OF GRUNDY

v.

ANTHONY HUGHES.

</div>

1. POWERS OF COUNTY.—That counties possess no powers except those "specially given by law" or " necessary to the exercise of " some so given.

2. POWER OF COUNTIES TO PAY BOUNTIES.—That under the act of May 2, 1861, declaring among other things " that the corporate authorities of any town or city and the county court or board of supervisors of any county in this State is hereby authorized to appropriate such sums as they may deem expedient for the purpose of aiding in the formation and equipment of volunteer companies mustered into the service of the United States or of the State for the purpose of enforcing the laws, suppressing insurrection or repelling invasion, and to aid in the support of the families of members of such companies while engaged in such military services," power was given to these corporate authorities (among which are counties) to appropriate money for bounties to be raised by taxation.

3. OPINIONS OF THE SUPREME COURT.—That in Briscoe v. Alison the attention of the Supreme Court was not called to the Act of 1861. The power to levy the tax there in question was claimed solely under the Private Law of 1865, and it was therefore very naturally assumed that if not given by that law it was not given at all. But in Fell v. The Supervisors of McLean Co. 43 Ill. 216, the court did expressly recognize the validity of a tax levied for three successive years under the act of 1861.

4. ENLISTMENT—AVERMENT.—That the averment in the declaration the enlistment was made under the call mentioned, and credited to the county thereon was sufficient.

County of Grundy v. Hughes.

5. CLAIM AGAINST COUNTY—HOW PROSECUTED—APPEAL.—That a per-
son presenting a claim against the county to the board of supervisors, upon
the rejection of such claim may appeal to the circuit court, or bring an orig-
inal action on the claim in that court, notwithstanding its rejection by the
board.

6. COUNTY NOT LIABLE FOR INTEREST.—That the county was not liable
for interest on the amount of the bounty. Interest has been allowed against
a county in the nature of damages when the plaintiff's money has been tor-
tiously obtained and withheld; but where the cause of action arises upon a
pure contract in this State a municipal corporation is liable for interest only
upon an express agreement to pay it, and such corporation must be expressly
or impliedly authorized to make such agreement.

APPEAL from the Circuit Court of Grundy county; the Hon.
GEORGE W. STIPP, Judge, presiding. Opinion filed February
28, 1881.

Messrs. JORDAN & STOUGH, for appellant; that in construing
a statute the court should consider the surrounding circum-
stances and condition of things, cited Clark et al. v. The City
of Janesville, 10 Wis. 136.

That the resolution passed by the County Board was void:
Greenwood v. De Kalb County, 90 Ill. 600.

As to the ground on which a law authorizing the payment
of bounties to volunteer soldiers, is held to be constitutional,
see Taylor v. Thompson et al. 42 Ill. 19.

Contemporaneous legislation may be referred to in the con-
struction of a statute: Smith v. The People, 47 N. Y. 330.

That a statute that extends the power of corporations, or in-
creases the burdens of taxation, should be strictly construed:
Chestnutwood v. Hood et al. 68 Ill. 132.

That if the claim is legal and binding upon the county, the
remedy is by a writ of mandamus: Giddings v. Quartermaster
General, 25 Mich. 340; Dayton v. Rounds, 27 Mich. 82.

Counties are not liable to pay interest, except in case where
there is an express agreement to do so: The County of Pike
v. Hosford, 11 Ill. 170; City of Chicago v. The People ex rel.
56 Ill. 327.

Messrs. DOUD & WING, for appellee; that a remedial statute
should be liberally construed, cited Wolcot v. Pond, 19 Conn.
597.

County of Grundy v. Hughes.

All laws and resolutions offering bounties to volunteers have been liberally construed by the Supreme Court of Illinois: Drake v. Phillips, 40 Ill. 388; Taylor v. Thompson, 42 Ill. 9; Henderson v. Lagow, 42 Ill. 360; Misner v. Bullard, 43 Ill. 470; Larimer v. McLean Co. 47 Ill. 36; Stebbins v. Leaman, 47 Ill. 352; Weir v. Leibert, 48 Ill. 458; Johnson v. Campbell, 49 Ill. 316; Elrod v. Bernadotte, 53 Ill. 369.

That the Supreme Court has construed the act of 1861: Fell v. Supervisors of McLean Co. 43 Ill. 216; Supervisors of McLean Co. v. Augustus, 63 Ill. 40.

That the statute is imperative: Malcomb v. Rogers, 5 Cowen, 185.

As to the motion to dismiss the suit, see Randolph v. Emerich, 13 Ill. 344; Fergerson v. Rawlings, 23 Ill. 69; Lindsay v. Stout, 59 Ill. 491.

Interest cannot be recovered in Illinois except where the statute authorizes it: Madison Co. v. Bartlett, 1 Scam. 67; City of Pekin v. Reynolds, 31 Ill. 530; City of Chicago v. Allock, 86 Ill. 385.

When interest may be recovered: LaSalle v. Simmons, 5 Gilm. 520; Wood v. Robbing, 11 Mass. 504; Commonwealth v. Crevor, 3 Binney, 121; Chaney v. Yeates, 1 N. H. 151; People v. Gasherie, 9 Johns. 71; Selleck v. French, 1 Conn. 32; Reid v. Renssellaer, 3 Cowen, 393; Ill. C. R. R. Co. v. Cobb et al. 72 Ill. 148.

Not having moved the court below for a re-assessment of damages, appellant is not in a position to question the allowance of interest: McCard v. Mechanics' National Bank, 84 Ill. 50.

PLEASANTS, J.—This is an action of assumpsit brought by appellee on an alleged agreement by the county to pay him a bounty for military services in the late war.

The special facts averred in the first count of his declaration are, that on the 30th day of December, 1863, the Board of Supervisors adopted the following preamble and resolution:

"WHEREAS, the President of the United States, has lately made a call for three hundred thousand more volunteers, and

u[1] o 1 the event of that number not being furnished by the 5th day of January, A. D. 1864, then a draft be made; therefore,

"*Resolved*, That as an additional inducement to persons to enlist under said call, the sum of one hundred and ten dollars bounty be and hereby is appropriated to be paid to each and every volunteer who has been and may hereafter be regularly mustered into the service of the United States as Grundy County Volunteers, under said call and be credited to said county;" that relying on said resolution he did enlist on the 14th day of January, 1864, and was regularly mustered into the service of the U. S. as a volunteer from said county under said call and was so credited thereon as a member of Company I in the 55th Regiment of Illinois Infantry; and that on the 15th of February, 1864, he duly presented his claim for said bounty to said board.

The second count differs only in that after the averment of plaintiffs, it pleads and sets out in *hæc verba* an act of the legislature of Jan'y 18, 1865, entitled, "An act to authorize the levy and collection of taxes in the counties therein named for the payment of bounties to persons mustered into the service of the United States, and provide for the adjustment of claims relating to the same," the first section of which enacts that the board of supervisors of said counties, including Grundy, "are hereby authorized at any regular or special session, to levy such special tax, not exceeding three per centum annually upon the taxable property in said counties, as may in their opinion be necessary to pay and discharge any part or all indebtedness now incurred, or which may by said board hereafter be created or incurred' on account of any appropriation which has heretofore been made or which may hereafter be made by said board, for the payment of bounties to volunteers or drafted men who have been mustered into the service of the United States, or to volunteers who may hereafter enlist and be mustered into said service, and have been or may hereafter be credited to said counties." Private Laws of 1865, p. 100.

A demurrer to these counts was overruled, and defendant

abiding by it, there was judgment by *nil dicit.* Defendant then entered its motion to dismiss the suit for want of jurisdiction, which was also overruled, and thereupon the court assessed the plaintiff's damages at $215, of which $105 was allowed as interest from the time of presentation of the claim, and rendered final judgment therefor.

It was stipulated that there had been no express agreement to pay interest, and exception was duly taken to its allowance as well as to the other rulings of the court. The errors here assigned are the overruling of the demurrer and of the motion to dismiss and the allowance of interest.

It is objected to the first count that it fails to show any authority given to the defendant to pay or to contract to pay bounties for enlistments. Counties possess no powers except those "specially given by law," or "necessary to the exercise of" some so given. Township Organization Law of 1861, Art. XIII. § 2 ; County of Hardin v. McFarlin, 82 Ill. 139. Unless, therefore, the power in question—which was certainly an extraordinary one—could be fairly derived under some act of the legislature of which the court could take judicial notice, the count was substantially defective.

And it is conceded that at the date of the adoption of this bounty resolution there was no such act, unless it was that of May 2, 1861, entitled " An act to encourage the formation and equipment of volunteer companies," p. 24 of the laws of the extra session, in Pub. and Ex. Laws of Illinois, 1861, by the first section of which it is declared "that the corporate authorities of any town or city, and the county court or board of supervisors of any county in this State, is hereby authorized to appropriate such sum as they may deem expedient, for the purpose of aiding in the formation and equipment of volunteer companies mustered into the service of the United States or of the State, for the purpose of enforcing the laws, suppressing insurrection or repelling invasion, and to aid in the support of the families of members of such companies while engaged in such military services."

The following sections authorize the levy and collection of a tax to raise the means required, direct the appointment of

agents to disburse them, and legalize appropriations previously made for the purposes indicated in the first.

That it was not understood to be the intention or effect of this act to confer power to pay bounties is argued from the facts that they were no where offered until long after its passage—that numerous acts were afterwards passed expressly conferring it upon municipal corporations therein respectively named,—and that the Supreme Court held in Briscoe v. Allison, 43 Ill. 291, that bounties not embraced within the terms of a private law of 1865, were unauthorized.

Manifestly the legislature contemplated a definite end, stated —the formation and equipment of volunteer companies for certain military service—and gave power to these corporate authorities to aid in its accomplishment by the appropriation of money to be raised by taxation. It may be that this or any other particular application of it, as necessary, was not in mind.

These would be various, depending upon the changing condition and circumstances of the country, and in May 1861, were to a great extent unforeseen. Accordingly no attempt was then made to specify them; but it cannot be held that because none was specified none was authorized. On the contrary it is therefore more clear that whatever application should be found to be necessary to the accomplishment of the end was as much within the grant of the power as if it had been specifically so declared. And whether necessary or not was a question which must be determined in the first instance by the corporate authorities. Hence the time when they first determined to offer bounties is no argument against their authority so to do when in their judgment it became necessary. That it was necessary in December, 1863, in order to avoid a draft, was certainly a very general judgment upon a very wide experience. And after this had become apparent the legislature did not hesitate, upon particular request, to pass laws specifically authorizing it.

In the case of Briscoe v. Allison, the attention of the court was not called to the act of 1861. The power to levy the tax there in question was claimed solely under the private law of 1865, and it was therefore very naturally assumed that if not

given by that law it was not given at all. But in Fell y. The Supervisors of McLean County, 43 Ill. 216, the Supreme Court did expressly recognize the validity of a tax levied for three successive years, under the act of 1861. And further, the board of supervisors of that county having adopted a resolution offering bounties, substantially like the one now under consideration, and in the same month, without other authority, so far as we have been able to discover, than said act of 1861, an action of assumpsit thereon by an enlisted volunteer for the bounty was sustained. Larimer v. The Board of Supervisors, 47 Ill. 36. So again, and after consideration, in The Board of Supervisors v. Augustus, 63 Id. 40. And although in these cases it does not appear that the question of power to pay bounties was raised, yet it could hardly have been overlooked, and we must regard them as decisive of the point.

To the second count it is objected that the act of July 18, 1865, therein set out, is not compulsory but permissive merely, and that it does not legalize the previous resolution of the board of supervisors or make it obligatory upon the county.

The objection, if valid, would be unimportant in the present case, provided the views above expressed in reference to the first count are sound; but as it may be material under the pleadings in some of those of the same general character, still pending in the circuit court, we observe that it was not the object of this act merely or directly to validate said resolution and hence it does not employ the language we should expect in such case. The title declares the object to be to authorize taxation for the payment of bounties, and the enacting clause following the title expressly includes bounties heretofore offered as well as those which thereafter should be.

Of course it does not purport to compel taxation to raise means for their payment, since they might be otherwise provided—as by voluntary contribution. But it authorizes or permits it, and that, by necessary implication, is sufficient to validate the offers of bounties in consideration of which enlistments had been made. The obligation of the county did not arise upon the act, but upon its own promise, validated by the act, and was according to the terms of that promise.

County of Grundy v. Hughes.

Nor do we understand, as contended by counsel, that it was left to the board " to *pay and discharge* any part or all," of the indebtedness mentioned as they, in their discretion, should see fit. That language had reference, not to the amount to be paid but to the amount of the tax to be levied at one session. They are obligated to pay to the extent of the indebtedness, but not obligated to levy at one session, an amount sufficient to pay it all; for that, by the terms of the act, included as well what was to be as what had been contracted, and the amount to be levied could not exceed three *per centum* annually upon the taxable property in the county.

Another objection urged against both counts, is that they do not aver that the enlistment of plaintiff was credited to the county on its *quota*.

The averment is that it was made under the call mentioned, and credited to the county thereon. We think that sufficient. It follows substantially the language of the resolution, which necessarily implies that under this call an account was opened between the general government and the county—that the latter was indebted to the former for its proportion of the number of men required, and that to the extent of its credit thereon it was saved from the impending draft.

Counsel for appellant, himself, admits that if the enlistments exceeded the *quota*, the excess was not credited on that call, but carried over to be credited on a subsequent one—referring to Adjutant-General's Report, Illinois, Vol. I., pp. 36, 37, published in compliance with a resolution of the legislature of February 16, 1867. Thus it appears that the averment brought the plaintiff's claim within the terms of the promise, and in a case in which the legislature was authorized to confer, as it did confer, the power to make the promise.

We are therefore of opinion that the demurrer to the declaration was properly overruled. The motion to dismiss the suit was based on the 35th section of the act of March 31, 1874, entitled "An act to revise the law in relation to counties," which provides that when a claim is presented to the board of supervisors and disallowed in whole or in part, and its nature is not such that its allowance is discretionary with the board, the

person presenting it may appeal from the decision of the board to the circuit court, in the manner and upon the terms in said act prescribed.

Plaintiff's claim was of that nature, and was so presented and disallowed.

By the 31st section of the same act it is provided that "all actions, local or transitory, against any county, may be commenced and prosecuted to final judgment in the circuit court or any court of general jurisdiction in the county against which the action is brought." It is insisted, however, that where a party has once presented his claim to the board and received its decision therein, his only remedy is by appeal.

But how can it be known that the claim will not be allowed until it is presented?

Can it be that because it is upon a contract which requires it to be presented, or, if not, because the claimant chooses first to give the board an opportunity to allow and pay it without suit, he thereby loses his right to commence and prosecute his action upon it in the circuit court? We do not think the legislature so intended.

It is also suggested that the only original remedy in the circuit court would be by *mandamus*.

Counties are subject to be sued like other corporations or natural persons, and in the same forms of action where applicable. The cause of action here is a simple contract, for the breach of which assumpsit is the usual and appropriate remedy. That action was sustained in the cases hereinbefore cited, and was expressly held proper in an analogous case against a municipal corporation. Elrod v. The Town of Bernadotte, 53 Ill. 368. This motion, therefore, was also rightfully overruled.

We are reluctantly of opinion, however, that the circuit court erred in allowing interest upon the amount of the bounty. It is true that it has been allowed against a county, as in the nature of damages, when the plaintiff's money has been tortiously obtained and withheld, as in The County of LaSalle v. Simmons, 5 Gilm. 520; or where the county was chargeable in equity as for a breach of trust, as in Bourland v. The County of Peoria, 16 Id. 539; but where the cause of

action arises upon a pure contract, the doctrine in this State seems to be that a municipal corporation is liable for interest only upon express agreement to pay it. County of Pike v. Hosford, 11 Ill. 170; City of Chicago v. The People ex rel. etc. 56 Id. 327.

And the county must be expressly or impliedly authorized to make such agreement. County of Hardin v. McFarlan, 82 Id. 138; Hall v. The County of Jackson, 5 Bradwell, 612. In this case there was no such agreement or authority to make it. And for this error the judgment is reversed and the cause remanded. If, however, the plaintiff shall remit, to the amount of the interest allowed, we see no objection to an entry of judgment for the bounty without further trial. Doxey v. Miller, 2 Bradwell, 34.

<div style="text-align:right">Reversed and remanded.</div>